# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHYLLIS L. LOGAN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-10-222-SPS |

## OPINION AND ORDER

The claimant Phyllis L. Logan requests review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on May 20 1963, and was forty-five years old at the time of the administrative hearing (Tr. 39).  She has a high school education, dental assistant training and has past relevant work as a factory disassembler, apparel stock clerk, sewing machine operator, cook, bartender, and waitress (Tr. 20).  The claimant alleges inability to work since March 19, 2006 due to degenerative disc disease, carpal tunnel syndrome, asthma, and low back pain (Tr. 140).

### Procedural History

On April 20, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Her application was denied.  ALJ Edward L. Thompson held an administrative hearing and determined the claimant was not disabled in a decision dated November 17, 2008. The Appeals Council denied review, so the ALJ's decision constitutes the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had a severe impairment (degenerative disc disease) but retained the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, she could lift/carry five

pounds frequently and ten pounds occasionally, and stand/walk/sit for six hours in an eight-hour workday, but that could not perform repetitive overhead work, lift greater than ten pounds, or remain stationary for more than thirty minutes at a time (she must change positions frequently.  The ALJ concluded that although the claimant could not return to any past relevant work, she was nevertheless not disabled because there was other work she could perform, *i. e.*, assembler, surveillance systems monitor, and machine tender operator (Tr. 20-21).

### Review

The claimant contends that the ALJ erred: (i) by failing to analyze the effect of her obesity on her RFC according to Soc. Sec. Ruling Social Security Ruling 02-1p; and, (ii) by failing to discuss the opinion of psychiatrist Dr. Everett Bayne, M.D. regarding her mental impairments.  Because the ALJ did fail to discuss Dr. Bayne's opinion and other probative evidence, the decision of the Commissioner must be reversed.

The claimant underwent surgery on her cervical spine on March 20, 2006 for a C6-7 anterior cervical discectomy and fusion with instrumentation in order to correct an extradural defect that was compressing a nerve root (Tr. 252-53).  On April 3, 2006, the claimant was sent for an ultrasound of her right leg because she was experiencing pain and swelling, but the results indicated there was no deep vein thrombosis (Tr. 247).

Dr. Bayne of Midwest Health Associates evaluated the claimant on July 25, 2006. She reported severe neck pain, feeling depressed for a long time, having suicidal thoughts (but no attempts or plans to commit suicide), poor energy, decreased interest in activities,

and short-term memory loss.  Dr. Bayne noted the claimant had not undergone continuing mental health treatment because she could not afford it (Tr. 269).  Dr. Bayne diagnosed major depression, recurrent, non-psychotic and secondary to chronic pain, opined that the claimant was unemployable, and assigned her a global assessment of functioning (GAF) score of 50 (Tr. 270).

     State agency physician Dr. Joseph Tran, M.D. evaluated the claimant on August 14, 2006.  He determined that the claimant suffered from chronic neck pain with history of neck surgery, back pain that radiates down to her right leg, asthma, and morbid obesity (Tr. 274).  Dr. Tran found that the claimant had a decreased range of motion in back extension and flexion, neck extension and flexion, and back lateral flexion to the left and right (Tr. 275).  He also found that the claimant's range of motion was decreased in shoulder abduction and adduction and left and right forward elevation (Tr. 276).  Further, Dr. Tran found that the claimant's straight leg raising test was positive bilaterally, but her heel to toe walking was very weak (Tr. 274).

     Reviewing physician Dr. Carolyn Goodrich, Ph.D. completed a psychiatric review technique (PRT) form on August 30, 2006.  Dr. Goodrich determined that the claimant suffered from major depression due to chronic pain characterized by appetite disturbance, sleep disturbance, and thoughts of suicide (Tr. 282).  Dr. Goodrich found, however, that the claimant had only mild limitations in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 289).

Dr. Luther Woodcock, M.D. assessed the claimant's functional limitations on August 30, 2006.  He found that claimant could occasionally lift/carry up to 20 pounds, frequently lift/carry 10 pounds, stand/walk for six hours in a normal eight-hour workday, sit about six hours in a normal workday, and that claimant had no other exertional limitations (Tr. 296-99).  Dr. Woodcock noted the claimant's obesity, muscle tension headaches, medications, and claimant's ability to drive herself to her psychological exam in his notes (Tr. 296-97).

The claimant was evaluated at Mental Health Services of Southern Oklahoma on September 13, 2006.  She reported frequent crying spells, feelings of hopelessness, mood swings, confusion, and suicidal thoughts (Tr. 306).  Her diagnosis was major depression disorder, and her GAF score was 55 (Tr. 307-08).  Dr. Darius Noori, M.D. gave her prescriptions for Seroquel and Bupropen (Tr. 310).

Dr. Burnard Pearce, Ph.D. reviewed the claimant's medical records and completed a PRT form, finding she suffered from major depression disorder (characterized by feelings of guilt or worthlessness, difficulty concentrating, and thoughts of suicide), adjustment disorder with anxious mood, and a history of drug and alcohol abuse, although she had been sober for 20 years (Tr. 312-20).  Like Dr. Goodrich, however, Dr. Pearce found that claimant suffered only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 322).

Dr. Lance E. Rosson, D.O. of Professional Medical Center evaluated the claimant in connection with a workers compensation claim on October 26, 2007. The claimant complained of neck pain radiating into her shoulders and arms, which increased with activity and exertion (Tr. 327). She also reported she avoiding lifting, bending, stooping, and twisting whenever possible because of low back pain radiating into her hips and legs (Tr. 327). Further, she complained of burning, numbness, and tingling in her right leg and thigh and ongoing problems with depression, including mood swings, irritability, and difficulty concentrating (Tr.327). Dr. Rosson's examination revealed "point tenderness over the suprascapular nerves bilaterally, as well as tenderness over the trapezius and suprascapular muscles bilaterally" (Tr. 327). He also found weakness of the cervical flexor and extensor musculature in claimant's (as evidenced by a decreased range of motion), "tenderness to palpation extending over the lower lumbrosacral region . . . as well as over the sacroiliac joints bilaterally[,]" and decreased range of motion in her back (Tr. 328). Dr. Rosson opined that the claimant has "sustained a significant change of condition for the worse in regards to her cervical spine," injury to her lower back "to include a lumbar disc derangement with chronic musculoligamentous injury, and residual neurosensory injury as a result of her cervical spine injury," and an "injury to her right leg, to include entrapment neuropathy with ongoing neuralgia and neuritis" (Tr. 328).

In conducting a "PRT analysis" of mental impairments pursuant to the applicable regulations, the ALJ must first determine if the claimant has a "medically determinable mental impairment," 20 C.F.R. § 404.1520a(b)(1), and then determine the degree of

function that the claimant has lost as a result of the impairment by assessing the claimant's level of functioning in four areas.  *Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995).  The areas are: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and, (iv) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  The ALJ must assess functional loss in each area on a five-point scale.  The first three areas utilize descriptive terms of none, mild, moderate, marked, and extreme, while the fourth utilizes numerical terms: none, one to two, three and four or more. 20 C.F.R. § 404.1520a(c)(4).

   The ALJ found that the claimant suffered from medically determinable mental impairments, *i. e.*, major depressive disorder, anxiety disorder and substance abuse, but found only mild limitations of functioning and no episodes of decompensation.  But the ALJ discussed only the evaluation of the claimant by Dr. Gregory Johnsen, and he failed to analyze Dr. Johnsen's findings in any meaningful way.  For example, the ALJ makes no mention of Dr. Bayne's psychological evaluation of the claimant (concluding, *inter alia*, that she was unemployable and had a GAF of 50).  The Commissioner argues that the failure to discuss Dr. Bayne's opinions was harmless because they were inconsistent with other medical evidence and not entitled to controlling weight because he was not a treating physician, but the ALJ offered no such rationale for apparently rejecting Dr. Bayne's opinions.  *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").  Furthermore, "[a]n ALJ must evaluate

every medical opinion in the record, *see* 20 C.F.R. § 404.1527(d), although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional[,]" *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."), *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995), and the Court is unable to determine if the ALJ actually evaluated Dr. Bayne's opinion because he did not even mention it.

The ALJ also erred in analyzing the claimant's physical limitations.  He noted that the claimant had "full range of motion, heel/toe intact . . . and tone within normal limits" (Tr. 20), but failed to discuss *any* evidence showing claimant's significantly decreased range of motion in her cervical spine, shoulders, and back, *i. e.*, the findings of both Dr. Tran and Dr. Rosson (Tr. 274-78, 326-30).  In this regard, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).

Because the ALJ failed to discuss significantly probative evidence, the decision of the Commissioner must be reversed and the case remanded for further analysis by the ALJ.  If such analysis results in any adjustment to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma